**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Solander,<br><br>      Plaintiff,<br><br>v.<br><br>South Ponderosa Stables Incorporated,<br><br>      Defendant. | No. CV-14-02081-PHX-DGC<br><br>**ORDER** |

  On September 19, 2014, Plaintiff Frank Solander brought suit against Defendant South Ponderosa Stables alleging violations of the Americans with Disabilities Act ("ADA"), the Arizona Civil Rights Act ("ACRA"), and A.R.S. § 23-1501. Doc. 1. Defendant seeks summary judgment, arguing that the employee numerosity requirement under the ADA and the ACRA is not satisfied and that Plaintiff's claim under A.R.S. § 23-1501 is time-barred. Doc. 19. The motion is fully briefed. The Court will grant Defendant's motion.[1]

**I. Background.**

  South Ponderosa Stables ("Ponderosa") hired Frank Solander as a stable worker on June 11, 2012. Doc. 1, ¶ 14. Ponderosa paid Solander a salary of $600 per month and provided him with room and board. *Id.*, ¶ 15. Solander claims that he began to experience serious health issues stemming from sinusitis in August 2012. *Id.*, ¶¶ 17-20.

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

He claims that he "requested a reasonable accommodation of time off from his work duties due to his declining health and vision," but that his employment was terminated on November 24, 2012, approximately one week after submitting the request. *Id.*, ¶ 31, 32. These facts, as well as the source of Solander's health problems, are disputed by Ponderosa. Doc. 15, ¶¶ 18-21, 32, 33. Solander claims that his employment was terminated in violation of the ADA, the ACRA, and A.R.S. § 23-1501.

**II.   Legal Standard.**

    **A.   Motion for Summary Judgment.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the non-moving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Only disputes over facts that might affect the outcome of the suit . . . [will] preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

**III.   Analysis.**

    **A.   Employee Numerosity Requirement under the ADA and the ACRA.**

The first six counts in Solander's complaint are brought under the ADA and the ACRA, and therefore rely on Ponderosa qualifying as an employer under the employee numerosity requirement of the ADA and the ACRA. *See* Doc. 1. For purposes of these statutes, an employer "means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in

the current or preceding calendar year . . . ." 42 U.S.C. § 12111(5)(A); *see* A.R.S. § 41-1461(6)(a). Thus, to successfully bring his claim regarding the termination of his employment in 2012, Solander must show that Ponderosa employed 15 or more employees for 20 or more weeks in either 2011 or 2012.[2]

Solander alleges that Ponderosa had between six and nine paid workers during his employment. Doc. 29-6, ¶ 8. Ponderosa has provided payroll records for May 1, 2011 through the end of 2012 showing that a total of 13 workers were paid during that period. Doc. 20 at 4-9.[3] Solander objects to the admission of the payroll records – even though they show more paid employees than he asserts – arguing that they are irrelevant and are not supported by personal knowledge. Doc. 28 at 12. Both objections are unfounded. The payroll records are plainly relevant to the number of employees at Ponderosa. Fed. R. Ev. 401. And the affiant, Beverly Hall, is the secretary of Ponderosa and attests that the payroll records are valid records of Ponderosa. Doc. 20 at 4-5.

Despite the fact that Solander and the payroll records show that there were fewer than 15 paid employees at Ponderosa in 2011 and 2012, Solander argues, for two reasons, that there is a genuine dispute of material fact as to whether Ponderosa employed more than 15 employees during these years: (1) Ponderosa used unpaid volunteers that should

---

[2] The Supreme Court has held that it is the plaintiff's burden to establish that his employer fulfills the employee numerosity requirement. *See*, *e.g*,. *Arbaugh v. Y&H Corp*., 546 U.S. 500, 516 (2006) (holding that "the threshold number of employees for application of Title VII is an element of plaintiff's claim for relief, not a jurisdictional issue"). The definition of employee and treatment of the numerosity requirement is uniform under statutory regimes such as Title VII, the ADA, and the ADEA. *See Fichman v. Media Center*, 512 F.3d 1157, 1161 (9th Cir. 2008) (finding that "[m]ost courts consider the definition of 'employee' to be uniform under federal statutes where it is not specifically defined, including the ADEA and ADA"); *Pawlawski v. Scherbenske*, 891 F. Supp. 2d 1077, 1082-83 (D. S.D. 2012) (relying on treatment of Title VII claims in *Arbaugh* in its analysis of the employee numerosity requirement under the ADA); *see also EEOC v. Johnson & Higgins, Inc.*, 91 F.3d 1529, 1538 (2d Cir. 1996) (referencing analogous definitions of "employee" in the ADEA, Title VII and FLSA).

[3] Ponderosa claims to have submitted payroll records for the period beginning January 1, 2011 and ending December 31, 2013, but the earliest record is dated May 1, 2011 and the latest record is dated January 12, 2013. The Court finds that this does not affect the sufficiency of the record, as there are less than 20 weeks between January 1 and May 1, 2011, and in no week between May 1 and December 31, 2011 did Ponderosa make payroll to 15 or more employees.

- 3 -

be counted as employees, and (2) Ponderosa forms an integrated enterprise with Sombrero Ranches and Colorado Horses, and the employee count should include the paid workers at these entities as well. Doc. 28 at 13-19, 20-21. The Court will address each argument in turn.

**1.    Volunteers.**

Solander claims that during his employment Ponderosa used between eight and ten unpaid volunteers each day. Doc. 29-6, ¶ 13. Solander argues that these volunteers should be counted as employees in addition to the six to nine paid workers.

As the Supreme Court has explained, the key factor in determining whether an individual is acting as an employee is whether his or her relationship with the alleged employer mirrors the "conventional master-servant relationship as understood by common-law agency doctrine." *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440, 445 (2003) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-323 (1992)). "At common law the relevant factors defining the master-servant relationship focus on the master's control over the servant." *Id.* at 448. The Ninth Circuit has adopted the six-factor test used by the Supreme Court in *Clackamas* to determine whether a non-traditional worker is an employee:

> 1) Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;
>
> 2) Whether and, if so, to what extent the organization supervises the individual's work;
>
> 3) Whether the individual reports to someone higher in the organization;
>
> 4) Whether and, if so, to what extent the individual is able to influence the organization;
>
> 5) Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts;
>
> 6) Whether the individual shares in the profits, losses, and liabilities of the organization.

*Fichman v. Media Center*, 512 F.3d 1157, 1160 (9th Cir. 2008) (citing *Clackamas*, 538 U.S. at 449-50). These factors are not exhaustive, and no single factor is decisive. *Id.*

1  The test is useful for determining whether an individual that considers himself to be a
2  volunteer qualifies as an employee. *See id.* at 1161.

3  Ponderosa's relationship with its volunteers does not reflect a conventional
4  master-servant relationship and is not indicative of common law agency. Beverly Hall,
5  who became manager of Ponderosa in August 2011, explained that volunteers have no
6  formal training and receive no formal instructions. Doc. 29-1 at 20. Volunteers "just
7  come and ride horses and do a guide ride now and again if they want to and such." *Id.* at
8  10. Hall stated that "there's no hiring and firing or anything [of volunteers]. They just
9  kind of disappear. . . . [Ponderosa doesn't] keep track of the volunteers." *Id.* at 12, 17.
10  She explained that Ponderosa has no control over the volunteers; she cannot tell them to
11  do anything, but can only "ask them, gee, do you want to take this ride out, do you want
12  to go on this ride?" *Id.* at 22. While at the corral, volunteers may pet the horses and
13  occasionally saddle them, but they do not feed or groom them. *Id.* While at the stables,
14  volunteers cannot take in money or recruit customers or other volunteers. *Id.* Volunteers
15  are required to sign an agreement to volunteer and are required to exercise common
16  sense. *Id.* at 20. If a volunteer were to violate certain standards, such as insulting a
17  customer, they would be told not to return. *Id.* Because volunteers can go out on guide
18  rides with guests, they can accept tips. *Id.* at 13.

19  Jacob Woodward also provided relevant deposition testimony. Doc. 29-2.
20  Woodward is a guide and is occasionally called in to Ponderosa to work for a half or full
21  day to lead trail rides. *Id.* at 2. He explained that volunteers help saddle horses and help
22  around the stables. *Id.* at 4. He stated that Ponderosa's office manager directs the
23  volunteers, explaining that the volunteers can be directed to "sweep the floor or scoop up
24  the [horse] poop." *Id.* at 5. "They help out with everything, just like everybody else. . . .
25  You're instructing them pretty much how to do that so they can do it on their own. You
26  know, it's a learning experience for them." *Id.* Woodward indicates that volunteers
27  show up irregularly. *Id.* "They come one weekend, they don't come the next two
28  weekends." *Id.* Finally, Woodward clarifies that volunteers and independent contractors,

unlike full-time employees, are not required to shovel horse poop, but do so only to voluntarily help out. *Id.* at 8.

Solander's affidavit does not differ substantially. He avows that volunteers "were not paid by Ponderosa, but were eligible for tips from customers"; they "worked at Ponderosa in hopes of securing a job or being allowed to take customers on trail rides so they could get tips"; they tended to the riding stables and horses, saddled horses for riding, and were allowed to lead tours; and their duties were directed and controlled by Hall and the guides. Doc. 29-6, ¶¶ 14-17.

Considering the six factors identified in *Clackamas* and the undisputed facts in this case, the Court concludes as a matter of law that the volunteers at Ponderosa are not employees. It is undisputed that Ponderosa does not formally hire or fire volunteers; they are not governed by any formal rules or regulations; they do not influence the operation of Ponderosa; volunteers and Ponderosa do not intend that the volunteers be employees as expressed in written agreements or contracts; and the volunteers do not share in the profits, losses, and liabilities of the organization. *Fichman*, 512 F.3d at 1160. Indeed, the volunteers are not paid at all by Ponderosa. The only factors favoring a common-law employee relationship are that Hall and the guides supervise the work of the volunteers and the volunteers presumably report to them. *Id.* But these facts would be present in any purely volunteer labor relationship, and the Court does not find them sufficient to overcome the balance of the undisputed evidence.

The other facts Solander asserts in his affidavit – that volunteers receive tips from customers, hope to secure jobs at Ponderosa, and tend to horses and stables, saddle horses, and lead rides (Doc. 29-6, ¶¶ 14-16) – do not alter this conclusion. These additional facts are also entirely consistent with a volunteer relationship.

Because Solander asserts that Ponderosa employed only six to nine employees while he was there, and volunteers do not count as employees, Ponderosa does not qualify as an employer under the ADA or ACRA unless it is an integrated enterprise.

- 6 -

### 2. Integrated Enterprises.

Solander also argues that Ponderosa forms an integrated enterprise with Sombrero Ranches and Colorado Horses, and that the companies jointly employ 15 or more individuals. Doc. 28 at 20. The Ninth Circuit employs a four-factor test to determine whether two or more entities operate as an integrated enterprise: "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control." *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 815 (9th Cir. 2002).[4] Solander has failed to present evidence that this four-part test is satisfied.

The first factor, interrelation of operations, weighs against finding that the entities are integrated. In *Kang*, this factor weighed in favor of an integrated enterprise because the two companies shared a single factory, the employees of both companies worked in the factory, and one company kept the other's accounts, issued its paychecks, and paid its bills. *Id.* There appears to be no similar interrelation of operations here.

With respect to Sombrero Ranches, Beverly Hall avows that Sombrero Ranches is located in Colorado and operated separately from Ponderosa. Doc. 29-1 at 4. Solander asserts in his statement of facts that Ponderosa and Sombrero Ranches shared employees in 2011 and 2012 (Doc. 30, ¶ 31), but his citations to the record (Hall Deposition pages 13 and 67 (Doc. 29-1 at 4, 18)) do not support that assertion. Indeed, Hall testified that the two entities *did not* share employees in 2011 and that she was unsure whether any 2012 employee had in fact worked for Sombrero Ranches. Doc. 29-1 at 4-5. Solander also asserts that Ponderosa and Sombrero Ranches "shared equipment needed for horseback riding" (Doc. 30, ¶ 38), but he provides no factual support for this assertion (Doc. 29-6 ¶ 21). He does not identify the equipment that was shared, when it was

---

[4] The integrated enterprise test was first used in labor relations cases, but its use has been expanded to the civil rights context. *See Hukill v. Auto Car, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999). It has been directly used in ADA cases to determine whether an entity can be held liable for ADA claims. *See Myers v. Scottsdale Bariatric Ctr.*, No. CV-05-504-PHX-FJM, 2006 WL 1882766, at *1 (D. Ariz. July 6, 2006); *Praseuth v. Newell-Rubbermaid, Inc.*, 219 F. Supp. 2d 1157, 1181 (D. Kan. 2002); *EEOC v. Chemtech Int'l. Corp.*, 890 F. Supp. 623, 625 (S.D. Tex. 1995).

- 7 -

shared, or whether it involved any payment.

With respect to Colorado Horses, Solander asserts that Ponderosa leased horses from Colorado Horses "without consideration." Doc. 28 at 20-21. Solander cites to Beverly Hall's deposition testimony that Ponderosa does lease horses from Colorado Horses from time to time, but she does not know how many were leased in 2011-2012. Doc. 30, ¶ 32; Doc. 29-1 at 23. He also cites to informal document production requests in which Ponderosa states that the leases were verbal. Doc. 30, ¶ 32; Doc. 29-7 at 2. Solander asserts that Ponderosa has no proof that it paid for the leased horses (Doc. 30, ¶ 33), but he cites only to an informal document request he made to Ponderosa which contains no response (Doc. 29-8 at 1).

The facts and evidence provided by Solander do not come close to the kind of evidence found sufficient in *Kang*. He provides no evidence of interrelated operations. *See Hutchinson v. American Family Mut. Ins. Co.*, No. CV-11-00785-TUC-CKJ, 2013 WL 1340051, at *11 (D. Ariz. Apr. 1, 2013) (finding no interrelation of operations when there was no evidence of shared facilities or bank accounts and no indication that companies paid each other's bills and paychecks).

The second factor, common management, also weighs against finding an integrated enterprise. Solander provides no evidence of common management. His statement of facts asserts only that Hall managed Ponderosa after August 19, 2011, that Katherine Lloyd and Susan Capriotti managed it before then, and that Ponderosa, Sombrero Ranches, and Colorado Horses are owned by Rex Walker. Doc. 28 at 21; Doc. 30, ¶¶ 4, 6, 8, 29, 30. He provides no evidence that Hall, Lloyd, or Capriotti also managed Sombrero Ranches or Colorado Horses, or that Rex Walker manages any of the entities. Solander's evidence, even if taken as true, is insufficient to establish common management of day-to-day operations. *See Hukill*, 192 F.3d at 443 (finding no common management where executives did not exercise control over operations).

The third factor, centralized control of labor relations, is often held to be the most important factor. *See Kang*, 296 F.3d at 815. "To satisfy the control prong, a parent must

control the day-to-day employment decisions of the subsidiary." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1991). Solander provides no evidence that Ponderosa, Sombrero Ranches, or Colorado Horses were under joint control for hiring, firing, or supervising employees. Solander states that Hall "had the authority to hire, fire, and direct [his] duties of employment" at Ponderosa (Doc. 29-6, ¶ 5), but there is no evidence that she controlled the hiring or firing of any employee of Sombrero Ranches or Colorado Horses. Solander also cites to his assertion that Ponderosa and Sombrero Ranches shared common employees in 2011 and 2012 (Doc. 28 at 21; Doc. 30, ¶ 31), but, as noted above, his citation to Hall's deposition (Doc. 30, ¶ 31) does not support this assertion. Hall testified that the two entities did not share employees in 2011 and that she was unsure whether any 2012 employee of Ponderosa had in fact worked for Sombrero Ranches. Doc. 29-1 at 4-5. Solander has presented no evidence that the entities had centralized control of labor relations. *See Hutchinson*, 2013 WL 1340051, at *11 (holding that the most critical factor, centralized control of labor relations, did not weigh in favor of finding an integrated enterprise when a parent company did not control its subsidiary's decisions to hire or fire the employee bringing discrimination claims).

As to the final factor, common ownership or financial control, there is evidence that Ponderosa, Sombrero Ranches, and Colorado Horses are owned by Rex Walker. Doc. 29-1 at 3-4. But this fact alone does not show that the entities are integrated. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1364 (10th Cir. 1993) (holding that common ownership alone is not sufficient to "establish parent liability").

In sum, Solander has failed to present evidence from which a reasonable jury could find that Ponderosa, Sombrero Ranches, and Colorado Horses form an integrated enterprise. Summary judgment is therefore appropriate. *Celotex*, 477 U.S. at 322. The employees of Sombrero Ranches and Colorado Horses may not be counted towards the employee numerosity requirement, and Ponderosa has too few employees to qualify as an employer for purposes of claims brought under the ADA and the ACRA.[5]

---

[5] Ponderosa has submitted new evidence in its reply. Doc. 35. The Court will not

**B.     Statute of Limitations.**

Solander's employment at Ponderosa was terminated on November 24, 2012. Doc. 1, ¶ 32. His complaint was filed almost two years later on September 19, 2014. Ponderosa argues that Solander's claim under A.R.S. § 23-1501 is barred by the one-year limitation period in A.R.S. § 12-541(4). Solander does not address this issue in his response. The Court finds that Solander's claim for wrongful termination under A.R.S. § 23-1501 is barred by the one-year statute of limitations.

**IT IS ORDERED:**

1. South Ponderosa Stables, Inc.'s motion for summary judgment (Doc. 19) is **granted.**
2. The clerk is directed to enter judgment and terminate this action.

Dated this 9th day of July, 2015.

David G. Campbell
United States District Judge

---

consider this evidence as Solander has not had an opportunity to respond. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

- 10 -